UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
Eastern Division

| | | |
|---|---|---|
| In Re: | ) | Chapter 7 |
| | ) | |
| ROBERT M. KOWALSKI, | ) | Bankr. Case No. 18-09130 |
| | ) | |
| Debtor. | ) | Hon. Jacqueline P. Cox |
| | ) | |
| | ) | |
| GUS A. PALOIAN, not individually, but | ) | |
| solely in his capacity as the duly-appointed | ) | |
| Trustee for the estate of Robert M. Kowalski, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Adv. Proceeding No. 19-00626 |
| v. | ) | |
| | ) | |
| Byline Bank, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**Memorandum Opinion**

The matter before the court arises from the amended adversary complaint filed by the Plaintiff, Gus A. Paloian, the chapter 7 trustee (the "Trustee") of the bankruptcy estate of Robert M. Kowalski ("Robert," "Kowalski," or the "Debtor") against the Defendant, Byline Bank ("Byline"), for violation of the automatic stay under 11 U.S.C. § 362, conversion under Illinois state law, and for turnover of property of the estate and avoidance of an unauthorized post-petition transfer of property of the estate under 11 U.S.C. § 542. *See* Am. Adv. Compl. (Dkt. 4) (hereinafter "Compl." or the "Complaint"), ¶¶ 45–75 (citations omitted). For the reasons that follow, judgment is entered in favor of the Plaintiff, the Trustee, on count II (conversion); judgment is entered in favor of the Defendant, Byline Bank, on counts I and III (violation of the automatic stay and turnover of property of the estate).

## I. Jurisdiction

The court has jurisdiction over this adversary proceeding under 28 U.S.C. §§ 157 and 1334. *See* Joint Stip. of Established Facts (Adv. Dkt. 157),¶ 1 (hereinafter "SOF"); *see also* Internal Operating Procedure 15(a) of the U.S. District Court for the Northern District of Illinois. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(E), orders to turn over property of the estate.

## II. Facts

The following facts are derived from the parties' Joint Stipulation of Established Facts (Adv. Dkt. 157), filings in the underlying bankruptcy case and this adversary proceeding, as well as the exhibits submitted to the court and the arguments of counsel heard at trial on December 17, 2024. Filings in this adversary proceeding, *Paloian v. Byline Bank* (*In re Kowalski*), Ch. 7 Case No. 18-09130, Adv. No. 19-00626 (Bankr. N.D. Ill. filed Apr. 25, 2019) will be referred to as the "Adv. Dkt." Filings in the underlying bankruptcy case, *In re Kowalski*, Case No. 18-09130 (Bankr. N.D. Ill. filed Mar. 29, 2018) will be referred to as the "Bk. Dkt."

The Defendant, Byline Bank ("Byline" or the "Defendant"), is a bank chartered under the laws of the State of Illinois with its headquarters in Chicago, Illinois. SOF (Adv. Dkt. 157), ¶ 6. The Plaintiff, Gus A. Paloian, the Trustee, is the Chapter 7 trustee of the bankruptcy estate of the Debtor. He was first duly appointed as the Debtor's Chapter 11 trustee on August 7, 2018 (Bk. Dkt. 106). On November 30, 2018, the court granted a motion to convert the case to chapter 7 *(See* Order Bk. Dkt. 276). On December 3, 2018, the U. S. Trustee appointed Mr. Paloian as the chapter 7 trustee herein. *See* Letter of Appointment (Bk. Dkt. 281).

On March 29, 2018, the Debtor filed a voluntary petition for relief under chapter 11 of the

Bankruptcy Code.[1] SOF (Adv. Dkt. 157), ¶¶ 5, 7. Under 11 U.S.C. § 362(a), an automatic stay took effect upon filing the bankruptcy case. *Id.*, ¶ 8. As noted above, the case was converted to chapter 7 on November 30, 2018.

On August 22, 2018, the Trustee sent a letter to Byline Bank informing it of the Bankruptcy Case (the "August 2018 Letter"). SOF (Adv. Dkt. 157), ¶ 9. Byline Bank received the August 2018 letter around that same date. *Id.*

Between August 31, 2017 and August 14, 2018, the Debtor purchased thirty-six (36) cashier's checks (collectively, the "Byline Cashier's Checks") totaling $352,166.35 from Byline using funds from his account. *Id.*, ¶ 10. Each check indicated that the remitter was "Robert Kowalski." *Id.*, ¶ 11. The payee on 34 of the checks was "Robert Kowalski." *Id.*, ¶ 12. Two of the checks, in the amounts of $64,084.35 and $3,000.00, respectively, indicated that the payee was Premium Title. *Id.*, ¶ 13.

At the time Byline received the August 2018 Letter, the Byline Cashier's Checks remained outstanding and had not yet been deposited into the Interest on Lawyers' Trust Account Account maintained by Jan Kowalski at Bank of America (the "IOLTA Account"). *Id.*, ¶ 14. Byline did not inform the Trustee about the existence of the Byline Cashier's Checks. *Id.*, ¶ 15.

Byline did not know the location, holder, or owner of the outstanding Byline Cashier's Checks or whether such checks had been transferred to a third party. *Id.*, ¶ 16. Byline did not receive a stop payment request or declaration of lost, stolen, or destroyed cashier's checks from the Trustee concerning the Byline Cashier's Checks prior to the date each was paid. *Id.*, ¶ 17.

Byline complains that the Trustee did not place a stop order on the cashier's check. The

---

[1] All references to the Bankruptcy Code are to title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.*

complaint rings hollow, as Byline Bank failed to check its manual logs where it maintained information about cashier's checks it issued. Had it searched all of its records, not just those maintained electronically, it might have discovered the checks and informed the Trustee that the Debtor had purchased them.

From August 31, 2018 to October 25, 2018, Jan Kowalski presented the Byline Cashier's Checks to Bank of America; Bank of America accepted the checks and deposited the proceeds of the checks into the IOLTA Account. *Id.*, ¶ 18.

Only one of the Byline Cashier's Checks was signed by the named payee which check had the signatures of both the Debtor and Jan Kowalski. *Id.*, ¶ 19. The remaining Byline Cashier's Checks were not signed by the named payee. *Id.*

Thirty-two (32) of the Byline Cashier's Checks were stamped on the back at the time of deposit into the IOLTA Account by a Bank of America representative with a stamp reading "Credited To The Account Of The Within Named Payee Endorsement Guaranteed Bank of America, N.A." *Id.*, ¶ 20. Three (3) of the Byline Cashier's Checks had the words "Deposit Only" handwritten on the back of each check. *Id.*, ¶ 21.

According to Bank of America, the deposits of the Byline Cashier's Checks complied with its internal policies and procedures for a deposit into an IOLTA account and Bank of America found nothing unusual with respect to the deposits by Jan Kowalski of the Byline Cashier's Checks into her IOLTA Account and treats funds deposited into an IOLTA account as client funds. *Id.*, ¶¶ 22-23. After deposit of each of the Byline Cashier's Checks into the IOLTA Account, Bank of America, in turn, presented each of the Byline Cashier's Checks to Byline through the Federa Reserve's check-clearing system (the "Check Clearing System"). *Id.*, ¶ 24.

Prior to October 25, 2018, Byline had no knowledge whether any of the Byline Cashier's Checks remained outstanding. *Id.*, ¶ 28. In 2018, Byline used FraudGuard, an optical imaging software, to manage the check payment process and "flag" potentially fraudulent items and items that have a stop payment order. *Id.*, ¶ 29. FraudGuard would detect (1) fraud based on a suspected signature or check stock problem and (2) the check number and amount that matched a stop payment order. *Id.*, ¶ 30. Upon such detection, Byline would manually review the items identified by FraudGuard. *Id.*, ¶ 31. Checks that are not "flagged" for those purposes "were paid electronically without any physical review." *Id.*, ¶ 32.

Byline paid Bank of America the face value of the Byline Cashier's Checks once presented for payment through the Check Clearing System. *Id.*, ¶ 33. Because the Byline Cashier's Checks were not flagged by FraudGuard, such checks were paid electronically without any review by any Byline employee or agent. *Id.*, ¶ 34.

Byline's problem is that it is not immune from liability based on its use of the FraudGuard check processing system. Byline defends this lawsuit on the basis, in part, of an Illinois Supreme Court opinion in *MidAmerica Bank, FSB v. Charter One Bank*, FSB, 232 Ill. 2d 560, 562-65 2009) where a depository bank sued a drawee bank to recover the value of a cashier's check on which the drawee bank issued a stop payment. The depository bank prevailed in the trial court. The appellate court reversed, in part, and affirmed, in part. The Illinois Supreme Court held that the drawee bank could not assert fraud to support its wrongful dishonor of the cashier's check where it did not know of any fraud before it dishonored the check and stopped payment because its customer requested such. *Id.* t 572. That case does not help Byline Bank. Byline had knowledge of the Debtor's bankruptcy case before it paid Bank of America. In any event, the dictates of federal law, the

Bankruptcy Code, requires that those who hold the assets of debtors turn them over to the bankruptcy estate.

### III. Discussion

In his adversary complaint, the Trustee brings three counts: violation of the automatic stay, conversion, and turnover of property of the estate. *See* Am. Adv. Compl. (Adv. Dkt. 4) ¶¶ 45-75. The court will examine each of these counts in turn.

### A. Count I - Violation of the Automatic Stay

In Count I, the Trustee alleges that the Byline Cashier's Checks were property of the estate and when, in spite of having notice of this bankruptcy case from the Trustee, Byline transferred the $352,166.30 in Estate funds to Bank of America without authorization, violating the automatic stay. *See* Am. Adv. Compl. (Dkt. 4), ¶ 57; Trustee's Trial Brief ("T's Trial Br.") (Adv. Dkt. 158), pp. 3, 7.

Upon the filing of a petition for bankruptcy relief, 11 U.S.C. § 541 creates a bankruptcy estate, which is comprised of "[a]ll legal or equitable interests of the debtor in property as of the commencement of the case," with exceptions noted in subsections (b) and (c)(2). 11 U.S.C. § 541(a)(1). "Thus, the Debtor's checking account and all monies contained therein became 'property of the estate' once [his] bankruptcy case was commenced." *In re Meadows*, 396 B.R. 485, 490 (B.A.P. 6th Cir. 2008) (citations omitted).

Under 11 U.S.C. § 362(a), an automatic stay takes effect upon the filing of a petition for bankruptcy relief under 11 U.S.C. §§ 301, 302, or 303. Section 362(a)(3) provides that a bankruptcy petition operates as a stay against "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3).

"The stay is not a judicial injunction that depends on notice; rather the stay is effective upon the filing of the case, regardless of notice." *In re Okedokun*, 968 F.3d 378, 386-87 (5th Cir. 2020) (citing 11 U.S.C. § 362(a); *In re Cueva*, 371 F.3d 232, 237 (5th Cir. 2004); *Elbar Invs., Inc. v. Pierce (In re Pierce)*, 272 B.R. 198, 203 (Bankr. S.D. Tex. 2001), *aff'd*, 91 F. App'x 927 (5th Cir. 2004)).

The Bankruptcy Code excepts certain specifically enumerated actions from the operation of the automatic stay, as set forth in 11 U.S.C. § 362(b). Section 362(b)(11) provides that the automatic stay does not operate as a stay of "[t]he presentment of a negotiable instrument and the giving of notice of and protesting dishonor of such an instrument."

Under Illinois law, presentment is defined as "[a] demand made by or on behalf of a person entitled to enforce an instrument (i) to pay the instrument made to the drawee or a party obliged to pay the instrument or, in the case of a note or accepted draft payable at a bank, to the bank or (ii) to accept a draft made to the drawee." 810 ILCS 5/3-501(a). In *In re Meadows*, presentment was defined almost identically under Ohio law. *In re Meadows*, 396 B.R. 485, 494-95 (B.A.P. 6th Cir. 2008) (citing Ohio Rev. Code Ann. § 1303.61). In that case, the court interpreted the meaning of § 362(b)(11) in light of the definition of presentment:

> It would be illogical to interpret § 362(b)(11) to mean that the holder of a check can hand the check to a bank teller but cannot take the cash the teller hands over the counter without violating the stay, or that the holder may accept the funds but must immediately return them to the drawer. Such an interpretation would render the exception essentially meaningless, because the purpose of presenting a check is to receive payment. An interpretation of this nature is also inconsistent with the legislative history of § 362(b)(11), which indicates, as recognized by the only two courts of appeals that have addressed the issue, that by the enactment of § 362(b)(11), 'Congress wanted to make clear that 'the automatic stay is not intended to interfere with the rights of a holder of a negotiable instrument to obtain payment.'

*In re Meadows*, 396 B.R. at 495 (citing 11 U.S.C. § 362(b)(11)); *In re Roete*, 936 F.2d 963, 966 (7th

Cir. 1991) (internal citation omitted).

Courts have reasoned that "[p]resentment alone of a negotiable instrument is sufficient to fall within the exception under § 362(b)(11)." *In re Davison*, Case No. 07-32621, 2008 WL 471678, at *4 (Bankr. E.D. Tenn. Feb. 19, 2008), *aff'd on other grounds sub nom. Davison v. Kanipe*, 410 B.R. 607 (E.D. Tenn. 2009). Hence, a holder of a negotiable instrument is not limited to presenting the check, but may also advise the debtor of its dishonor and of the holder's position regarding that dishonor, without violating the stay. *In re Thomas*, 428 F.3d 735, 737 n.3 (8th Cir. 2005).

The majority of courts have held that "the retention of funds received from an unauthorized transfer of property of the estate in the form of the post-petition cashing of a pre-petition check does not violate the automatic stay." [2] For that reason, based on the § 362(b)(11) exception to the imposition of the automatic stay, the court finds that Byline did not violate the automatic stay. Judgment is granted in favor of Byline and against the Trustee Paloian on count I (violation of the automatic stay).

## B. Count II - Conversion

In Count II, the Trustee alleges that Byline is liable for conversion under Illinois law because

---

[2] *In re Meadows*, 396 B.R. at 496 (citing *Blasco v. Money Servs. Ctr. d/b/a Cash Connection (In re Blasco)*, 352 B.R. 888, 894 (Bankr. N.D. Ala. 2006) (pre-petition check negotiated, deposited and presented for payment post-petition by payday lender fell within § 362(b)(11) exception and did not violate stay); *Thomas v. Money Mart Fin. Servs., Inc. (In re Thomas)*, 311 B.R. 75, 79 (Bankr. W.D. Mo. 2004) (presentment of post-dated checks was not a violation of the automatic stay; court declined "to adopt an interpretation of [§ 362(b)(11)] which would render it essentially nugatory"), *aff'd*, 428 F.3d 735 (8th Cir. 2005); *Franklin v. Kwik Cash of Martin (In re Franklin)*, 254 B.R. 718, 720 (Bankr. W.D. Tenn. 2000) (post-petition cashing of check by payday lender falls within § 362(b)(11)'s exception to automatic stay); *In re Figueira*, 163 B.R. 192, 195 (Bankr. D. Kan. 1993) (*dictum* that creditors who cashed pre-petition checks from debtor post-petition did not violate the automatic stay due to the § 362(b)(11) exception); *but see In re Davison*, 2008 WL 471678, at *4 (recognizing that creditor in possession of funds received from the post-petition cashing of the debtor's pre-petition check was in violation of the automatic stay, but no willful violation where creditor returned funds to debtor immediately upon learning of bankruptcy filing)).

it made payment with respect to the Byline Cashier's Checks to Bank of America for deposit into an IOLTA account in the name of Jan Kowalski, neither of which were the payee on any one of the 36 cashier's checks at issue. Trustee's Trial Br. (Adv. Dkt. 158), p. 12 (footnote omitted).

"Conversion is the unauthorized deprivation of property from the person entitled to its possession." *In re Estate of Yanni*, 2015 IL App (2d) 150108, ¶ 21, 48 N.E.3d 1161, 1166, 400 Ill. Dec. 721, 727 (citing *Sandy Creek Condo. Ass'n v. Stolt & Egner, Inc.*, 267 Ill. App. 3d 291, 294, 204 Ill. Dec. 709, 712, 642 N.E.2d 171, 174 (Ill. App. Ct. 1994)). To prove conversion, the plaintiff must show "(1) a right to the property; (2) an absolute and unconditional right to the immediate possession of the property; (3) a demand for possession; and (4) that the defendant wrongfully and without authorization assumed control, dominion, or ownership of the property." *Russell Dean, Inc. v. Maher*, No. 17 C 8440, 2018 WL 4679573, at *8 (N.D. Ill. Sept. 28, 2018) (citing *Van Diest Supply Co. v. Shelby Cnty. State Bank*, 425 F.3d 437, 439 (7th Cir. 2005)). The *Russell Dean* court noted that the measure of damages for conversion is the fair market value at conversion, plus legal interest. *Id.* The court will award the Plaintiff, Trustee Paloian the value of the property. Byline argues that section 550 of the Bankruptcy Code limits liability for avoided transfers to transferees. Count II does not seek avoidance of a transfer and for that reason is not affected by the transferee limit of § 550. The court will award the Trustee $352,166.35.

"Illinois courts recognize a cause of action for conversion of commercial paper, such as a check, on the theory that the intangible right is merged into the specific document." *In re Ostrom-Martin, Inc.*, 188 B.R. 245, 257 (Bankr. C.D. Ill. 1995) (citing *Great Lakes Higher Educ. Corp. v. Austin Bank of Chi.*, 837 F.Supp. 892, 897 (N.D. Ill. 1993)). A party that pleads an action for conversion under the common law or UCC § 3-419 must assert "it had title to or possession of

-9-

the check." *Id.* (citing *In re Oxford Mktg., Ltd.*, 444 F. Supp. 399, 404-05 (N.D. Ill. 1978)). "Under Illinois law, the elements of a cause of action for conversion under UCC § 3-419 are: (1) plaintiff's ownership of, interest in, or possession of the check; (2) plaintiff's forged or unauthorized endorsement on the check; and (3) defendant bank's unauthorized cashing of the check." *Id.* (citing *Burks Drywall Inc. v. Wa. Bank & Trust Co.*, 110 Ill.App.3d 569, 573, 66 Ill.Dec. 222, 226, 442 N.E.2d 648, 652 (Ill. App. Ct. 1982)). Bankruptcy Code § 541 gave the Trustee title to checks' amounts before they were negotiated because as the checks' remitter, the Debtor could have obtained a refund by returning them to Byline.

Note the Illinois Supreme Court's discussion in its *MidAmerica* ruling that the protection from prosecution for conversion of cashier's checks is that they are essentially cash. "*Able* held that a bank has no right to stop payment on cashier's checks because they are the equivalent of cash." *MidAmerica*, 232 Ill.2d at 570. This court understands that when viewed as cash equivalents, cashier's checks are too difficult to stop payment on. However, there may be fewer constraints where, as here, a debtor purchased the checks and made them payable to himself. Perhaps, financial institutions that issue such checks can make note of such. There may not be an innocent payee in need of protection where as here a debtor uses cashier's checks to conceal his assets from inclusion in his bankruptcy estate.

Byline has posited authority that payment can never be stopped on a cashier's check. No statute prohibits such. The Illinois statute that addresses refusals to pay cashier's checks, teller's checks, and certified checks states that:

> If the obligated bank wrongfully (i) refuses to pay a cashier's check
> or certified check, (ii) stops payment of a teller's check, or (iii)
> refuses to pay a dishonored teller's check, the person asserting the

right to enforce the check is entitled to compensation for expenses and loss of interest resulting from the nonpayment and may recover consequential damages if the obligated bank refuses to pay after receiving notice of particular circumstances giving rise to the damages.

810 ILCS 5/3-411(b).

That provision does not strictly forbid stop payments on cashier's checks.

Bankruptcy Code § 323(b) gives trustees the right to prosecute causes of action belonging to the estate, which comprise either the actions "brought by the trustee as successor of the debtor's interest in the estate" or "those brought under the trustee's avoiding powers." *Ostrum-Martin*, 188 B.R. at 251 (citations omitted). Where the trustee is bringing actions as the successor to the debtor's interest in the estate, "[t]he trustee stands in the shoes of the debtor and may only institute whatever actions the debtor could have brought itself and is subject to the same defenses as could have been asserted by the defendant had the action been brought by the debtor." *Id.* (citations omitted). Had Byline informed the Trustee of the existence of the checks, the Trustee could have sought them and attempted to present them to Byline to stop payment on them,

The Trustee will prevail on his conversion claim. He has shown his right to the cashier's checks, which at case filing were the property of the Debtor; the cashier's checks became property of the bankruptcy estate. The Trustee's right to the cashier's checks is unconditional, as established by Bankruptcy Code § 541 which makes a debtor's property at filing property of the bankruptcy estate. The Trustee's August 22, 2018 letter to Byline Bank was a demand for possession of all of the Debtor's interests held by that bank. Byline wrongfully failed to examine its records, leading it to transfer the cashier's checks' value. Byline argues that the Trustee's conversion claim fails because § 550 limits recovery to transferees, while it is a transferor.

-11-

The conversion count is a tort claim, not a request to avoid a transfer. Section 550, which allows recovery from transferees, applies to avoided transfers; the conversion count does not seek to avoid a transfer and then to recover it under § 550. The court will enter judgment in favor of the Plaintiff, Trustee Paloian, and against the Defendant Byline Bank on Count II - the conversion claim.

### C. Count III - Turnover of Property of the Estate

Section 542(a) of the Bankruptcy Code requires, with certain exceptions, that entities in possession of property that a trustee may use, sell or lease, shall deliver to the trustee and account for such property or its value.

The duty to turnover property of the bankruptcy estate to its trustee may appear to absolve an entity protected by the § 362(b)(11) exception to the imposition of the automatic stay from its directive.

Courts interpreting section 362(b)(11) have reasoned that "[s]ection 362(b)(11) does not authorize any transfer of estate property, it merely permits the presenter's performance of an act that would otherwise be a stay violation." *In re Thomas*, 311 B.R. at 79.

In *In re Davison*, the court explained the interaction between the stay (§ 362(a)), the exception for negotiable instruments (§ 362(b)(11)), the definition of "property of the estate" (§ 541), and the duty to turn over property of the estate (§ 542):

> While § 362(b)(11) provides an exception to the automatic stay for presentment of checks, it does not provide an exception to the broad definition of property of the estate. As such, the cashing of the Debtor's check post-petition constituted an unauthorized post-petition transfer, which was avoidable by the Chapter 7 trustee pursuant to 11 U.S.C. § 549(a)(1) and (2)(B) (2005).

*In re Davison*, 2008 WL 471678 at *4 (citing *In re Meadows*, 379 B.R. 737, 742, 744 (Bankr. S.D.Ohio 2008); *Franklin v. Kwik Cash of Martin (In re Franklin)*, 254 B.R. 718, 721 (Bankr.

W.D. Tenn. 2000); and *In re Noffsinger*, 316 B.R. 283, 286-87 (Bankr. W.D. Ky. 2004)).

In that case, the court reasoned that the stay did not prevent the creditors from presenting debtor's check for payment, "[b]ut they had an affirmative duty to turn over the $ 230.00 pursuant to 11 U.S.C. § 542(a) (2005), which states that any entity in possession or control of property of the estate must turn it over whether it is to be administered by the chapter 7 trustee or exempted by the debtor." *Davison*, 2008 WL 471678, at *4. Similarly, in *Yoon v. Minter-Higgins,* the court explained that under 11 U.S.C. § 362(b)(11), the demand for payment of a check does not violate the stay. *Yoon v. Minter-Higgins*, 399 B.R. 34, 39 (N.D. Ind. 2008) (citations omitted). However, § 362(b)(11) "[d]oes not authorize transfers of estate property for the payment of negotiable instruments presented post-petition." *Id.* at *40 (citations omitted). Hence, "[t]he negotiation of a check does not violate the automatic stay but, because the checking account becomes property of the estate when the petition is filed, transferring the funds from the account to the payee runs afoul of section 549(a)." COLLIER ON BANKRUPTCY ¶ 549.04 [2] (Richard Levin & Henry J. Sommer, eds. 16th ed.) (footnotes omitted) (citing *In re Webb*, 432 B.R. 234 (Bankr. N.D. Miss. 2010)).

Section 549(a) of the Bankruptcy Code provides that the trustee may avoid unauthorized post-petition transfers of property of the estate. 11 U.S.C. § 549.

Because Byline's transfers of the $352,166.35 in estate funds were unauthorized post-petition transfers, they may be avoided by the Trustee.

However, Bankruptcy Code § 550 allows recovery of § 549 post-petition transfers from transferees, not transferors. In 2005, a bankruptcy court noted that Lake County, Ohio owed a debtor funds pursuant to a contract but sent the funds owed the debtor to a different entity post-,petition. *In re Compugard Servs., Inc.* 335 B.R. 661, 666 (Bankr. N.D. Ohio 2005). The trustee

-13-

therein alleged that Lake County (and another agency) paid funds due the debtor to LEI and/or

Mssrs. Friedman and Wisniewski.  In dismissing a count based on sections 549 and 550, the

court noted that Lake County alleged that even if the trustee could prove that the money was

property of the estate and could get the transfer avoided, he was not entitled to recover the

payments made by Lake County as a transferor. In dismissing that count, the court said:

> [n]o authority has been established by the Trustee that under § 550(a), he can
> sustain a recovery of the alleged postpetition transfer made by Lake County (the
> alleged transferor) from Lake County, instead of the alleged transferee.  The
> statute is clear and unambiguous that the Trustee may recover from an initial,
> immediate, or mediate transferee.

Byline Bank is not a transferee.  For that reason, judgment will be entered in favor of the

Defendant Byline Bank and against the Plaintiff Trustee Paloian on Count III.  Trustee Paloian

can avoid the post-petition transfer but cannot recover it from Byline.  Bankruptcy Code section

550(a) allows the recovery of the value of unauthorized transfers for the benefit of the estate only

from transferees.

## IV. Conclusion

For the reasons described in this opinion, judgment is entered in favor of the Plaintiff, the

Trustee, on Count II.  Judgment is entered in favor of the Defendant, Byline Bank, on Counts I

and III.

**Date:** May 13, 2025                                          **ENTERED:**

_Jacqueline P. Cox_
Jacqueline P. Cox
Chief Bankruptcy Judge
Northern District of Illinois